## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PATRICK CHENDES, JILLIAN    **:**    Case No.:
SMITH and DION TUMMINELLO    **:**
                **:**    Hon.
         Plaintiff(s),    **:**
                **:**    CLASS ACTION (ERISA)
       v.    **:**    COMPLAINT
                **:**
XEROX HR SOLUTIONS, LLC,    **:**
                **:**
         Defendants.    **:**
_____

## CLASS ACTION COMPLAINT

## PRELIMINARY STATEMENT

1.     Plaintiffs Patrick Chendes, Jillian Smith and Dion Tumminello ("Plaintiffs") bring this action on behalf of three Ford Motor Company ("Ford" or the "Company") retirement plans and all other similarly situated qualified retirement plans (the "Plans"). The three Ford plans (collectively, the "Ford Plans") are: (i) the Ford Retirement Plan (the "FRP"), (ii) the Ford Motor Company Savings and Stock Investment Plan for Salaried Employees (the "Salaried Plan"), and (iii) the Ford Motor Company Tax-Efficient Savings Plan for Hourly Employees (the "TESPHE Plan").

2.     Plaintiffs bring this action under Sections 502(a)(2) and 502(a)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"),

29 U.S.C. §§ 1132(a)(2) and 1132(a)(3), against Xerox HR Solutions, LLC ("Xerox HR" or "Defendant").

3.     The Ford Plans participate in the Ford Defined Contribution Plans Master Trust ("Master Trust"). Ford established the Master Trust to permit the commingling of trust assets of the Ford Plans for investment and administrative purposes. FRP is funded with employer contributions only. The Salaried Plan allows regular full-time salaried and some part-time Ford employees to participate and contribute a portion of their salary on a pre-tax, Roth and/or after-tax basis in order to save for retirement. Ford makes matching contributions and/or profit-sharing contributions to supplement the employees' contributions to the Salaried Plan. The TESPHE Plan allows eligible Ford hourly employees to contribute on a pre-tax, Roth and/or after-tax basis. TESPHE Plan participants may also elect to contribute distributions from the Company's Profit Sharing Plan to the TESPHE Plan on a pre-tax or Roth basis. Ford also makes supplemental and retirement contributions to the TESPHE Plan.

4.     Participant accounts in the Ford Plans are thus comprised of various combinations of any employee contributions, any employer contributions and any investment income earned from the individual investment options selected within the participant account.

5.     The Master Trust provides for several individual investment options, and the Ford Plans give individual plan participants the ability to choose among various investment options. Investment options include currently: BlackRock

2

U.S. Debt Index Fund, BlackRock EAFE MSCI Index NL Fund,  Wells Fargo Short Term Funds,  BlackRock LifePath Index Ret NL Fund,  BlackRock LifePath Index 2020 NL Fund, BlackRock LifePath Index 2025 NL Fund, BlackRock LifePath Index 2030 NL Fund, BlackRock LifePath Index 2035 NL Fund, BlackRock LifePath Index 2040 NL Fund,  BlackRock LifePath Index 2045 NL Fund, BlackRock LifePath Index 2050 NL Fund, BlackRock LifePath Index 2055 NL Fund, State Street Global Equity Index NL Fund, State Street U.S. Inflation Pro Bono Index, Vanguard US Equity Index Fund, T. Rowe Price Int'l Small Cap Equity Trust, Voya Clarion Global R.E. Sec Trust and Blackrock MSCI ACWI Ex-US IMI Index.  Participants in the Salaried Plan and the TESPHE Plan also have the opportunity to invest in voting shares of the Company.  In the absence of participant investment directions, contributions are invested in one of the LifePath funds as the qualified default investment alternative ("QDIA").

6.     At December 31, 2015, the net assets in the Master Trust totaled $13.94 billion.  At year-end 2015, FRP's interest in the Master Trust represented approximately 2 percent of the assets in the Master Trust, the Salaried Plan's interest represented approximately 67 percent of the assets and TEPHE Plan represented approximately 31 percent of the assets.

7.     Xerox HR provides platform and recordkeeping services to the Master Trust for the administration of the Ford Plans.  The Ford Plans are "individual account plans," tax-qualified retirement plans maintained by employers for the benefit of their employees. An individual account plan is defined in Section

3

3(34) of ERISA, 29 U.S.C. § 1002(34), as "a pension plan which provides for an individual account for each participant and for benefits based solely on the amount contributed to the participant's account, and any income, expenses, gains and losses ... which may be allocated to such participant's account." Participants in the Ford Plans are responsible for directing the investment of their accounts among the available investment options.

8.    As recognized by the Employee Benefit Security Administration ("EBSA") of the U.S. Department of Labor ("DOL"), "[g]iven the rise in participation in 401(k) type plans and IRAs, the retirement security of millions of America's workers increasingly depends on their investment decisions. ***Thus, there is increased recognition of the importance of investment advice in helping participants avoid costly investment errors***."[1]  (Emphasis added.)

9.    In recognition of that need, Financial Engines Inc. through its subsidiary, Financial Engines Advisors, LLC, a federally registered investment advisor ("FE" or "Financial Engines"), developed a computer-based investment advice program which, based on personal and personal financial information and retirement expectations and goals provided by plan participants, will control the allocation of participants' accounts among the various investment options available through the plan.

---

[1]    EBSA Fact Sheet, "*Proposed Regulation to Increase Workers' Access to High Quality Investment Advice,*" Feb. 26, 2010, available at http://www.dol.gov/ebsa/newsroom/fsinvestmentadvice.html (last reviewed March 24, 2016 (emphasis added).  *See* Exhibit A attached.

4

10.     Nearly all individual account plans are administered on recordkeeping platforms provided by companies like Xerox HR.   Therefore, the most efficient way to make FE's services available to plan participants is to make the services available on platforms like the Xerox HR plan recordkeeping platform on a plan-wide basis.

11.     Accordingly, among the optional services that Xerox HR makes available to its qualified plan customers is the opportunity for plan participants to obtain professional investment advice regarding the investment of their Plan accounts.  Xerox HR has contracted with Financial Engines to provide professional investment advice services to individual participants in the retirement plans serviced on the Xerox HR recordkeeping platform through an agreement (the "Master FE Agreement") that dictates and controls certain of the terms and conditions on which FE will provide services to the retirement plans administered on the Xerox HR platform.

12.     Ford elected to include such investment advice service among the optional services made available by Xerox HR to Plaintiff and the other participants in the Ford Plans.  A separate agreement was signed between the Ford Plans and/or Master Trust and FE. The agreement between the Ford Plans and FE contains an acknowledgement that FE is an ERISA fiduciary with respect to the investment advice program and specifies the fee that FE will charge to Plaintiffs and other plan participants for its services, stated as a percentage of the value of a participant's account on a scaled basis.

5

13.     FE and Xerox HR were not content, however, with merely providing participants with access to FE's services.  Xerox HR wanted a piece of FE's action, and saw an opportunity to take a percentage of the account of every participant choosing to use FE's services, in addition to the fees Xerox HR was collecting for recordkeeping.  Accordingly, in order to be included as the investment advice service provider on Xerox HR's platform, FE agreed to pay -- and is paying -- Xerox HR a significant percentage of the fees it collects from Ford's 401(k) plan investors, like plaintiffs Patrick Chendes, Jillian Smith and Dion Tumminello.  For its part, FE was interested in securing an arrangement with Xerox HR to be the exclusive provider of investment advice to participants in retirement plans administered on Xerox HR's platform, and was willing to charge excessive fees to Plaintiffs and other participants in order to meet Xerox HR's demand for a kickback.  These fees are not being paid for any substantial services being provided by Xerox HR to FE or to participants of the Plans (the fees being paid ostensibly for "data connectivity services" as described in the Annual Return of the Master Trust filed with the EBSA on Form 5500 ("Annual Return")), but are instead being paid as part of a so-called "pay-to-play" arrangement; better described in the pejorative as a kickback.  This "pay to play" arrangement wrongfully inflates the price of FE's professional investment advice services that are critical to the successful management of workers' retirement savings and violates the fiduciary responsibility and prohibited transaction rules of Sections 404, 405 and 406 of ERISA, 29 U.S.C. §§ 1104, 1105 and 1106.

6

14.    Participants in the Ford Plans who use FE pay excessive fees -- excessive because of the fee-sharing arrangement with Xerox HR.  Participants in the Ford Plans who opted to use Financial Engines paid FE $5,794,426 in 2015, out of which FE paid $1,840,048 to Xerox HR.   Similar indirect fee-sharing payments have been made each year since 2012 to Xerox HR by FE.

## JURISDICTION

15.    Plaintiffs bring this action pursuant to ERISA §§ 502(a)(2) and 502(a)(3), 29 U.S.C. §§ 1132(a)(2), and (3).   This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and 28 U.S.C. § 1331 because this action arises under the laws of the United States. Also, in the alternative, jurisdiction is proper pursuant to 28 U.S.C. §§ 1332, 1367.

16.    Pursuant to 29 U.S.C. § 1132(e)(2) venue is proper in this District because the plans are administered in this district and the breaches occurred in this District.  *Id.*

## THE PARTIES AND THE PLANS

17.    At all relevant times (the "Relevant Period"), Plaintiffs Patrick Chendes, Jillian Smith and Dion Tumminello have been participants in the Ford Plans, consisting of ERISA plans as defined in ERISA § 3(7), 29 U.S.C. § 1002(7).  Plaintiffs engaged FE to provide investment advice.

7

18.    Plaintiff Patrick Chendes is a resident of the State of Michigan. Mr. Chendes participated in the FRP and the Salaried Plan during the Relevant Period, during which his account was invested through FE's Professional Management Program.

19.    Plaintiff Dion Tumminello is a resident of the State of Michigan. Mr. Tumminello participated in the TESPHE Plan during the Relevant Period, during which his account was invested through FE's Professional Management Program.

20.    Plaintiff Jillian Smith is a resident of the State of Missouri.  Ms. Smith participated in the TESPHE Plan during the Relevant Period, during which her account was invested through FE's Professional Management Program.

21.    At all relevant times, the Ford Plans were employee pension benefit plans within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A) and an individual account plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).

22.    Ford Motor Company is a Delaware corporation with its headquarters in Dearborn, Michigan.

23.    Defendant Xerox HR Solutions, LLC is a Pennsylvania limited liability company with its headquarters in New York, New York.  Xerox HR provides recordkeeping and information management services for employee benefit plans for which it received direct compensation from the Ford Plans, and received indirect compensation from Financial Engines in connection with the

services FE provides to selected participants in the Ford Plans.  Xerox HR is a subsidiary of Xerox Corporation ("Xerox").  Xerox acquired ACS HR Solutions, LLC in 2010 and renamed it Xerox HR Solutions, LLC in early 2012.

24.     The Ford Plans allow participants to elect investment advisory services provided by FE.  At all relevant times, FE was the exclusive provider of individualized investment advice services to participants in the Plans.

## GENERAL ALLEGATIONS

### A.     Xerox's Fee Sharing Arrangement with Financial Engines

25.     Commencing in 2011, the Director of Employee Benefits at Ford began sending letters to Salaried Plan participants to consider opting into Professional Management offered by FE "to manage your account, build a personalized retirement plan, pick investments for you, and help keep you on track."

26.     According to the September 2011 letter, Ford negotiated the Professional Management fee with FE as a percentage of the value of a participant's account invested through FE:  45 basis points (forty-five hundredths of one percent) for the first $100,000 invested; 35 basis points for the next $150,000 invested; and 20 basis points for amounts in excess of $250,000 invested. Forty-five basis points is the maximum FE fee for any individual participant's account.  For accounts with balances in excess of $100,000, the FE fee is, therefore, less than 45 basis points.

27.     This Professional Management fee structure has remained the same since 2011.

28.     FE's Form ADV filed with the Securities and Exchange Commission in connection with FE's status as a registered investment adviser states: "FEA may reimburse or compensate certain plan providers for maintaining secure communications links between the plan provider's information systems and FEA's systems for the purpose of facilitating the provision of FEA's services to FEA's clients who are plan participants."

29.     FE's Form 10-K for fiscal year 2015 states with regard to the arrangement with Xerox HR:

> In these relationships, we are the primary advisor and a plan fiduciary. Data is shared between the plan providers and us via data connections. In addition, our sales teams directly engage plan sponsors, although, in some cases, we have formed and are executing a joint sales and collaborative marketing strategy with the plan provider. *We have separate contracts with both the plan sponsor and plan provider, and pay fees to the plan provider for facilitating the exchange of plan and plan participant data as well as implementing our transaction instructions for member accounts.* Plan providers with whom we have direct advisory relationships are Aon Hewitt, Charles Schwab, Fidelity, Mercer, T. Rowe Price, and *Xerox HR*.

> (Emphasis added.)

30.     On information and belief, FE is paying Xerox HR over 30% of the fees it receives from the Ford Plans.  For example, according to the Master Trust's 2015 Form 5500 Filing Schedule C, the Ford Plans paid FE $5.79 Million, and FE paid $1.84 Million of this amount back to Xerox HR, purportedly for "Data

Connectivity Services."   On a relative value basis, Xerox HR's fee for whatever service, if any, it actually provides with respect to participants' use of FE's service is plainly unreasonable.

31.   The Annual Returns for the Ford Plans, for plan years from 2010 through 2015, report that Xerox HR was a service provider to the Ford Plans and received direct compensation from the Ford Plans as follows:

| Ford Plans' Direct Fees Paid to Xerox HR | |
|---|---|
| 2010 | $733,542[2] |
| 2011 | $526,565[3] |
| 2012 | $1,693,768 |
| 2013 | $625,217 |
| 2014 | $590,180 |
| 2015 | $448,965 |

32.   The Annual Returns for 2012 through 2015 further report that FE was a service provider to the Ford Plans and that as a service provider received direct compensation from the Ford Plans and paid indirect compensation to Xerox HR as follows:[4]

---

[2]   Fees paid to ACS HR Solutions, LLC; predecessor of Xerox HR.

[3]   Fees paid to ACS HR Solutions, LLC; predecessor of Xerox HR.

[4]   The Form 5500s for the Master Trust for the Ford Plans indicate that Xerox HR reported receiving total indirect compensation excluding "eligible indirect compensation." "Eligible Indirect Compensation" is defined in the Instructions for Form 5500 as "[i]ndirect compensation that is fees or expense reimbursement payments charged to investment funds and reflected in the value of the investment

| Ford Plans' Compensation Paid Directly to FE and Indirectly to Xerox HR by FE | | |
|---|---|---|
| | *FE Direct* | *Xerox HR Indirect* |
| 2012 | $1,815,638 | $692,393 |
| 2013 | $3,391,191 | $1,155,617 |
| 2014 | $4,408,443 | $1,172,153 |
| 2015 | $5,794,426 | $1,850,997 |

33.     There is no rational justification for an asset-based fee for whatever services Xerox HR provided in connection with FE's investment advice program. For example, the level of Xerox HR's services to a participant who chooses to use FE's investment advice service does not increase when that participant's account has grown through additional contributions or investment gains, yet Xerox HR's fee will increase in proportion to the increase in the value of the account.

34.     Likewise, Xerox HR provides no greater service to one Plan participant whose account value invested through FE is $50,000 than to another Plan participant whose account value invested through FE is $75,000, yet Xerox HR's fee for the latter participant's account is 50% greater than the fee for the former's account.

---

or return on investment of the participating plan or its participants[,] finders' fees[,] 'soft dollar' revenue, float revenue, and/or brokerage commissions or other transaction- based fees for transactions or services involving the plan that were not paid directly by the plan or plan sponsor."  The fee sharing payments received by Xerox HR that are the subject of this litigation are not considered "eligible indirect compensation" for purposes of the Master Trust's Form 5500 reporting.

35.    In fact, since the interface of FE's advice program with Xerox HR's recordkeeping system does nothing more than implement investment instructions on behalf of participants in the same manner that participants directly provide investment instructions in the Ford Plans, rights that all participants have simply by virtue of their participation in the Ford Plans, Xerox HR is doing nothing more than providing an electronic mechanism for implementing instructions the participants could implement on their own.

36.    FE describes its advisory services in its latest Form 10-K as follows:

> Unlike traditional advisory services, we do not rely on the subjective evaluation of each plan participant's portfolio by a human investment advisor. Instead, our services rely on Advice Engines that accept inputs on available investment choices along with a variety of personal information including investment objective, risk tolerance, investment horizon, age, savings, outside personal assets, investor preferences and tax considerations. This approach results in a consistent, systematic and objective investment methodology in which the advice generation is distinct from the method of delivery, which may be online, via printed materials or through phone conversations with our registered Investment Advisor Representatives or the call center representatives of certain plan providers with whom we have relationships.

37.    The cost of maintaining "secure communications links" between Xerox HR and FE does not increase appreciably when the number of participants in the Ford Plans using FE's services increases from 2000 to 3000, but Xerox HR's fee for providing the data connectivity service could increase by 50%. An asset-based fee to Xerox HR for a fixed level of service is unreasonable.

38.     Whether or not an asset-based fee for a fixed service is ever reasonable, the amount of compensation Xerox HR received was plainly unreasonable in relation to the services being provided.

### B.     Xerox's Status as Fiduciary

39.     "Hiring a service provider in and of itself is a fiduciary function."[5] Xerox HR hired FE and controlled the negotiation of the terms and conditions under which FE would provide its services to the participants of the Ford Plans--specifically, the terms requiring payment to Xerox HR of a portion of the fees paid by retirement plan investors for participating in the investment advice program. If a Plan sponsor whose retirement plan was administered on the Xerox HR platform wanted to provide an investment advice program to its participants, there was no choice but to accept FE as the provider, together with the unlawful fee-sharing arrangement with Xerox HR complained of herein.

40.     More specifically, "[t]he power to appoint fiduciaries is itself a fiduciary function." *Kling v. Fidelity Management Trust Co.*, 323 F. Supp. 2d 132, 143 (D. Mass. 2004).   FE is unquestionably a fiduciary, because it "renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan", 29 U.S.C. § 1002(21)(A)(ii), and has acknowledged in writing that it is a fiduciary.

---

[5]     EBSA Publication *Meeting Your Fiduciary Responsibilities*, available at http://www.dol.gov/ebsa/publications/fiduciaryresponsibility.html (last visited Mar. 24, 2016).  *See* Exhibit B attached.

41.     Because Xerox HR selected FE as the sole provider of investment advice to the Ford Plans and any other plan administered on Xerox HR's platform, and because the selection of a plan service provider fiduciary is itself a fiduciary function, Xerox HR is a fiduciary to the Plans.

42.     Furthermore, since the terms of FE's services to Plaintiffs are governed in part by the terms of the Master FE Agreement, Xerox HR maintains an ongoing level of discretionary control over the agreement between FE and the Ford Plans and the other Plans, which it exercises through the continual enforcement, and acceptance of the benefits of, the illegal arrangement embedded in the Master FE Agreement.

43.     Fiduciaries for retirement plans owe the plan and its participants and beneficiaries duties described as among the "highest known to the law." *Chao* v *Hall Holding Co*., 285 F.3d 415, 426 (6th Cir. 2002).

44.     When choosing service providers for a retirement plan, an ERISA plan fiduciary is required to act with the care, skill, prudence and diligence that would be exercised by someone who is experienced and knowledgeable about the services to be provided; a prudent expert.  Most fundamentally, ERISA fiduciaries are required to act solely in the best interests of plan participants.  ERISA § 404(a)(1), 29 U.S.C. 1104(a)(1).  That is especially true when choosing a service provider who will be a fiduciary to the retirement plan, because making that selection requires a determination that the service provider will perform its services

15

competently and solely in the best interests of the plan participants it will be advising.

45.    Contrary to that obligation, Xerox HR selected a fiduciary that it knew would violate that obligation by implementing the illegal kickback scheme. Further, in Xerox HR's selection of FE as a fiduciary, it knew or should have known that it was not acting in the best interests of the participants and beneficiaries by negotiating a fee that required a kickback to Xerox HR; that it was not acting to defray reasonable expenses of administering the plan or acting with the care, skill, prudence and diligence required by a prudent fiduciary.

## XEROX'S FIDUCIARY BREACHES

46.    Specifically, with respect to that most fundamental duty of loyalty, ERISA prohibits a plan fiduciary from:  (i) dealing with the assets of the plan for its own benefit or for its own account; (ii) representing a party or acting in a transaction on behalf of a party whose interests are adverse to the interests of the plan or its participants; and (iii) receiving for its own account any consideration from a party dealing with such plan in a transaction involving plan assets. ERISA § 406(b), 29 U.S.C. § 1106(b).

47.    Xerox HR, by the terms of the Master FE Agreement, requires FE to charge an excessive fee to Plan participants, taken directly from participants' Plan accounts, which FE then passes on to Xerox HR, effectively dealing with the plan assets for its own benefit or its own account.

48.    Xerox HR, in negotiating the terms on which FE would provide fiduciary investment advice services, represented its own interests rather than the interests of Plaintiffs and all other plan participants and beneficiaries, and extracted a fee that was far in excess of the value of any services provided in exchange for that fee and far in excess of any reasonable expenses required for administering the plan.

49.    Xerox HR, as a fiduciary to Plaintiffs and the Ford Plans, is receiving fees deducted from Plaintiffs' accounts derived from FE's management of Plaintiffs' and other participants accounts, which are clearly transactions involving plan assets.

50.    In turn, because Xerox HR's agreement with FE mandated the payment of a fee to Xerox HR based on the use by participants in the Ford Plans of the investment advice program, Xerox HR caused the Ford Plans to engage in transactions resulting in the transfer of plan assets to or for the benefit of Xerox HR, a party-in-interest, in violation of 29 U.S.C. 1106(a)(1)(D). This occurred through the imposition of excessive fees in connection with Xerox HR's unlawful fee sharing arrangement with FE.

51.    As a result of this fee sharing arrangement with FE, Xerox HR received for its own account consideration from a party (FE) dealing with the Ford Plans in transactions involving plan assets, in violation of ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3).

52.    None of the statements or disclosures provided to participants by either Xerox HR or FE disclosed the nature or the amount of the fee being paid to Xerox HR.

###    C.    FE's Fiduciary Breaches

53.    FE is a fiduciary to Plaintiffs and all other participants whose plan accounts are managed by FE.  FE owes to Plaintiffs and the other participants a duty of undivided loyalty.  Yet every time FE charges a fee for its services, it knows that a significant percentage of that fee will go directly to Xerox HR, for which it knew or should have known that Xerox HR was performing little or no services.  FE is taking plan assets from participants' accounts in the guise of its investment management fee and transferring those assets to Xerox HR, a party in interest, in violation of 29 U.S.C. § 1106(a)(1)(D) and 29 U.S.C. § 1104(A)(i)(ii) and (B).

54.    FE's *quid pro quo* for agreeing with Xerox HR to charge an excessive fee for investment advice services so that Xerox HR could receive additional and illegal compensation from the participants in its customer plans was that FE became the exclusive investment advice provider on the Xerox HR platform.  The fruits of this conspiracy could not be achieved unless FE, after it became a fiduciary, continued to implement and enforce the illegal arrangement by charging excessive fees, in clear violation of FE's duty of undivided loyalty to Plaintiffs.

**D.    Xerox's Liability for FE's Fiduciary Breaches**

55.    Xerox is liable for FE's fiduciary breaches.  ERISA § 405, 29 U.S.C. § 1105

56.    Even if, *arguendo*, Xerox HR were not considered a fiduciary with respect to the selection of FE and the imposition of the fee-sharing arrangement on the Plans, the U.S. Supreme Court has made it clear that ERISA § 502(a)(3) authorizes a civil action against a non-fiduciary who participates in a transaction prohibited by ERISA § 406:[6]

> As petitioners and *amicus curiae* the United States observe, it has long been settled that when a trustee in breach of his fiduciary duty to the beneficiaries transfers trust property to a third person, the third person takes the property subject to the trust, unless he has purchased the property for value and without notice of the fiduciary's breach of duty. The trustee or beneficiaries may then maintain an action for restitution of the property (if not already disposed of) or disgorgement of proceeds (if already disposed of), and disgorgement of the third person's profits derived therefrom.[7]

---

[6] *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000).

[7] *Id.*, at 245.

## <u>CLASS ACTION ALLEGATIONS</u>

57.    29 U.S.C. §1132(a)(2) authorizes any participant or beneficiary of a plan to bring an action individually on behalf of a plan to enforce a breaching fiduciary's liability to a plan under 29 U.S.C. § 1109(a).

58.    In acting in this representative capacity, and to enhance the due process protections of unnamed participants and beneficiaries of the plan, as an alternative to direct individual actions on behalf of the plan under 29 U.S.C. §§1132(a)(2) and (3), Plaintiffs seek to certify this matter as a class action on behalf of all participants and beneficiaries in the Ford Plans and the Plans. Plaintiffs seeks to certify, and to be appointed as representatives of, the following class (the "Class"):

> All Participants and beneficiaries in the Ford Plans and in all other participant-directed individual account Plans for which Xerox HR provides recordkeeping services and for which Financial Engines provides investment advice to Plan participants (the "Plans"), one or more of whose participants have elected to utilize Financial Engines' Professional Management services, at any time before the filing of this action, and after the date on which Financial Engines first provided investment advice to Plan participants, through the date of judgment ("Class Period").

59.    This action meets the requirements of Rule 23 and is certifiable as a class action for the following reasons:

a.    The proposed Class includes thousands of members and is so large that joinder of all its members is impracticable.

b.     There are questions of law and fact common to the Class because the Defendant owed fiduciary duties to the Ford Plans and to all Plans and took the actions and omissions alleged herein as to all of the Plans and not as to any individual Plan.   Thus, common questions of law and fact include the following, without limitation: whether Xerox HR is a fiduciary with respect to the Plans and is liable for the remedies provided by 29 U.S.C. §1109(a) and 29 U.S.C. § 1132(a); whether as a fiduciary of the Plans, Xerox HR breached its fiduciary duties to the Plans; whether Xerox HR has co-fiduciary liability for any breaches by FE pursuant to 29 U.S.C. § 1105; if Xerox HR is not a fiduciary with respect to the selection and continued relationship with FE, whether Xerox HR is liable as a non-fiduciary with respect to FE's fiduciary breach;  how the losses to the Plans resulting from the alleged breaches of fiduciary duty are to be calculated; and what damages and equitable remedies and other relief apply.

c.     Plaintiffs' claims are typical of the claims of the Class because each Plaintiff was a Ford Plan participant during the time period at issue in this action, utilized FE's services, and all similarly situated participants in the Plans were harmed by Defendant's misconduct.

d.     Plaintiffs are adequate representatives of the Class because they were participants in the Ford Plans during the Class period utilizing the services of FE, have no interest that is in conflict with the Class, are committed to the vigorous

21

representation of the Class, and have engaged experienced and competent attorneys to represent the Class.

e.    Prosecution of separate actions by individual Plans for these breaches of fiduciary duties would create the risk of:  (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant in respect to the discharge of their fiduciary duties to the Plans and personal liability to the Ford Plans under 29 U.S.C. §1109(a) and 29 U.S.C. § 1132(a), and (2) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Ford Plans would, as a practical matter, be dispositive of the interests of the Plans not parties to the adjudication or would substantially impair or impede those Ford Plans' ability to protect their interests.  Therefore, this action should be certified as a class action under Rule 23(b)(1)(A) or (B).

60.    A class action is the superior method for the fair and efficient adjudication of this controversy because joinder of all participants and beneficiaries is impracticable; the losses suffered by individual Plans and/or individual Plan participants may be small, rendering impracticable the enforcement of their rights through individual actions; and the common questions of law and fact predominate over individual questions. Given the nature of the allegations, no Class member has an interest in individually controlling the prosecution of this matter, and Plaintiffs are aware of no difficulties likely to be encountered in the

management of this matter as a class action. Alternatively, then, this action may be certified as a class under Rule 23(b)(3) if it is not certified under Rule 23(b)(1)(A) or (B).

61.     Plaintiffs' counsel will fairly and adequately represent the interests of the Class and is best able to represent the interests of the Class under Rule 23(g).

## COUNT I

### ERISA § 404, 29 U.S.C. §1104 – Breach of Duty of Loyalty and Prudence – Unreasonable Administrative Fees

62.     Plaintiffs repeat and reallege each of the allegations in the foregoing paragraphs as if fully set forth herein.

63.     ERISA § 404, 29 U.S.C. § 1104 requires that Xerox HR and FE perform their fiduciary duties with respect to the plan solely in the interest of the participants and beneficiaries.  *Id.* §1104(1)(A)(i).  This duty is often characterized as the duty of loyalty.

64.     ERISA § 404, 29 U.S.C. § 1104 requires that Xerox HR and FE perform their fiduciary duties "for the exclusive purpose of  providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the plan".  *Id.* §1104(1)(A)(ii).

65.     ERISA § 404, 29 U.S.C. § 1104 requires that Xerox HR and FE perform their fiduciary duties "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and

familiar with such matters would use in the conduct of an enterprise of a like character and with like aims".  *Id* § 404(1)(B).

66.     Xerox HR  breached its fiduciary duties by, inter alia,:

a.     entering into a scheme to inflate fees and improperly share revenue as set forth herein;

b.     failing to monitor and control its expenses;

c.     causing itself to be paid excessive fees in breach of its fiduciary duties; *Tibble v. Edison Int'l*, 135 S.Ct. 1823 (2015).

d.     failing to engage in a prudent process for selecting an investment adviser to the Plans, thus breaching its fiduciary duties;

e.     failing to fully and adequately disclose to the participants its fee sharing scheme;

f.     failing to advise the plan and the participants of the breaches of fiduciary duty by its co-fiduciary, FE; and

g.     engaging in such other acts as shall become known during the course of discovery.

67.     FE breached its fiduciary duties by, *inter alia*,

a.     entering into a scheme to inflate fees and improperly share those fees as set forth herein;

b.     failing to monitor and control its expenses;

24

      c.     causing itself to be paid excessive fees in breach of its fiduciary duties for the purpose of making illegal kickbacks to Defendant Xerox HR; *Tibble v. Edison Int'l,* 135 S.Ct. 1823 (2015).

      d.     failing to fully and adequately disclose to the participants its fee sharing scheme;

      e.     failing to advise the plan and the participants of the breaches of fiduciary duty by its co-fiduciary Xerox HR; and

      f.     engaging in such other acts as shall become known during the course of discovery.

68.    Xerox HR and FE knew or should have known that their conduct breached their fiduciary duties. Yet, Xerox HR and FE both failed to advise the Plan and the participants and to disclose the other's misconduct or to remedy the breaches.  Thus, Defendant Xerox HR is responsible for its own breaches and/or the breaches of FE.  ERISA § 405, 29 U.S.C. § 1105.

69.    Due to these breaches of fiduciary duty, the plans have suffered losses; and the value of plan assets in the participants' individual accounts have been impaired.  *LaRue v DeWolff, Boberg & Associates, Inc.,* 552 U.S. 243, 128 S.Ct. 1020, 1026 (2008).

70.    Plaintiffs bring this action to recover for these breaches pursuant to ERISA §§ 502 (a) (2), (3) and 409 and seek all damages and equitable or remedial

relief as appropriate, including costs and attorneys' fees pursuant to ERISA § 502(g).

## COUNT II

### Breach of Duty of Loyalty -- Investment Advice Program
### Dealing with Plan Assets for its Own Account;
### Receiving Consideration from a Party Dealing With Such Plan

71.    Plaintiffs repeat and reallege each of the allegations in the foregoing paragraphs as if fully set forth herein.

72.    ERISA § 406(b)(1), 29 U.S.C. §1106(b)(1), prohibits a fiduciary from dealing with the assets of a plan in its own interest or for its own account or otherwise engaging in a prohibited transaction.

73.    ERISA § 406(b)(3), 29 U.S.C. §1106(b)(3), prohibits a fiduciary from receiving any consideration for its own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

74.    Xerox HR acted as a fiduciary to Plaintiffs, the Ford Plans, and the Plans by, *inter alia*: (a) hiring FE and controlling the negotiation of the terms and conditions under which FE would provide its services to Plan participants, thereby effectively selecting FE as the investment advice provider and fiduciary for the Plans; and (b) retaining discretionary control over the terms of FE's services after FE became the investment advice provider to the Ford Plans and other Plans on the Xerox HR platform, through implementation and enforcement of the Master FE Agreement.

26

75.    Xerox HR, as a plan fiduciary with respect to the selection of FE and with respect to its discretionary control over the terms of FE's agreement with the Ford Plans and the Plans through the Master FE Agreement, received consideration for its own account from FE in connection with FE's management of participant accounts (which constitute transactions involving plan assets), in violation of 29 U.S.C. §1106(b)(3).

76.    Xerox HR breached its duty of loyalty under ERISA owed to Plaintiffs, the Ford Plans, and the Plans.  These breaches include, *inter alia*:  (a) receiving fee sharing payments from FE for Xerox HR's own benefit, at the expense of participants, the Ford Plans, and the Plans; and (b) charging unreasonable and excessive fees for the services provided to FE in connection with FE's investment advice program.

77.    FE is a fiduciary as set forth herein and also breached its fiduciary duty by self-dealing as a conflicted party to this transaction pursuant to ERISA § 406(b), 29 U.S.C. § 1106(b)

78.    Xerox HR was aware of and participated in not only its own breaches of fiduciary duty and self-dealing, but also the breaches of fiduciary duty and self-dealing of its co-fiduciary, FE.  Xerox HR is responsible for not only its own breaches of fiduciary duty and self-dealing, but also for the breaches and self-dealing of its co-fiduciary FE.  ERISA § 405; 29 U.S.C. § 1105.

79.    Due to these breaches of fiduciary duty and self-dealing, the plans have suffered losses; and the value of plan assets in the participants' individual

accounts have been impaired. *LaRue v DeWolff, Boberg & Associates, Inc.,* 552 U.S. 243, 128 S.Ct. 1020, 1026 (2008).

80.     Plaintiffs bring this action to recover for these breaches of fiduciary duty and self-dealing pursuant to ERISA §§ 502 (a) (2), (3) and 409 and seek all damages and equitable or remedial relief as appropriate, including costs and attorneys' fees pursuant to ERISA § 502(g).

## COUNT III

### Non-Fiduciary Liability for Fiduciary Breach --
### Receipt of Improper Payment from Investment Advisor

81.     Plaintiffs repeat and reallege each of the allegations in the foregoing paragraphs as if fully set forth herein.

82.     FE, as a fiduciary to the Plaintiffs, the Ford Plans and the Plans,

a.      Breached its duty of prudence by charging unreasonable, excessive fees to participants' accounts in relation to the minimal services provided by Xerox HR; and

b.      Breached its duty of loyalty by charging unreasonable, excessive fees to participants' accounts for the purpose of transferring plan assets to or for the benefit of Xerox HR as a party-in-interest to the Ford Plans, in violation of the prohibitions of ERISA Sections 406(a) and 406(b) and in breach of ERISA Section 404 which requires fiduciaries to defray only the reasonable expenses of

administering the plan, to perform their fiduciary duties prudently and solely in the interest of the participants and beneficiaries.

83.     The authority provided in ERISA Section 502(a)(3) to a plan participant, beneficiary, or fiduciary to bring a civil action for appropriate equitable relief extends to a suit against a non-fiduciary "party in interest" to a prohibited transaction barred by ERISA Section 406.[8]

84.     Defendant Xerox HR knew or should have known that FE violated ERISA Sections 404, 406(a) and 406(b) by causing the Plaintiffs, the Ford Plans and the Plans to pay excessive and improper compensation to Xerox HR.  These transactions were not exempt under section 408(b)(2) or any other provision of ERISA, and Xerox HR knew or should have known so.  As a knowing recipient of the improper payment, Xerox HR is liable to Plaintiffs, the Ford Plans and the Plans for disgorgement of the proceeds of the illegal arrangement.

85.     Xerox HR is liable under 29 U.S.C. §§1109(a) and 1132(a) to make good to the Ford Plans and the Plans any losses to them resulting from the breaches of fiduciary duty alleged in this Count and is subject to other equitable or remedial relief as appropriate.

---

[8] *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000).

## COUNT IV

### Prohibited Transaction -- Excessive and Unreasonable Compensation for Services Related to Financial Engines in Violation of ERISA §408(b)(2)

86.     Plaintiffs repeat and reallege the allegations contained above as if fully stated herein.

87.     Section 406(a)(1)(C) of ERISA, 29 U.S.C. § 1106(a)(1)(C), generally prohibits the direct or indirect furnishing of services between a plan and a party-in-interest.

88.     Section 3(14) of ERISA, 29 U.S. Code § 1002(14) defines a party-in-interest as, among other things, as a person providing services to a plan.

89.     As a result of providing recordkeeping services to the Ford Plans and the Plans, Xerox HR is a party-in-interest to the Ford Plan and the Plans.

90.     Section 408(b)(2) of ERISA, 29 U.S.C. § 1108(b)(2) exempts from the prohibitions of ERISA § 406(a)(1)(C) "contracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, *if no more than reasonable compensation is paid therefor*" (emphasis added).

91.     The indirect compensation Xerox HR received from FE in connection with FE's services to the Ford Plans and the Plans and their participants constitutes excessive and unreasonable compensation for which no exemption is available.

92.     Accordingly, Xerox HR is liable to Plaintiffs, the Ford Plans, and the Plans for their actual damages as proven at trial, and any other available remedy pursuant to ERISA §§ 502(a)(2) and (3) and 409,  plus interest and attorney's fees.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for judgment as follows:

A.     Certify this action as a class action as stated here and appoint Plaintiffs' counsel as Class Counsel pursuant to Federal Rule of Civil Procedure 23;

B.     Declare that Defendant Xerox HR breached its fiduciary duties to the Class;

C.     Declare that Defendant Xerox HR, as either a co-fiduciary, or non-fiduciary is responsible for any breaches of fiduciary duty and self-dealing by FE;

D.     Enjoin Defendant from further violations of its fiduciary responsibilities, obligations, and duties and from further engaging in transactions prohibited by ERISA;

E.     Order that Defendant make good to the Ford Plans and the Plans the losses resulting from its serial breaches of fiduciary duty;

F.      Order that Defendant disgorge any profits that it made through its breaches of fiduciary duty and prohibited transactions and impose a constructive trust and/or equitable lien on any funds received by Defendant therefrom;

G.      Order any other available equitable relief, or remedies, including but not limited to, the imposition of a surcharge, the restoration of the Plans to the position they would have been but for the breaches of fiduciary duty and self-dealing; and any other kind of relief and/or damages available pursuant to ERISA §§ 409 and 502(a)(2) and (3).

H.      Order any relief or remedy necessary to recover for the fiduciary breaches that have impaired the value of plan assets in the participants' individual accounts;

I.      Award Plaintiffs' attorney's fees and costs incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the Ford Plans;

J.      Order Defendant to pay prejudgment interest; (in addition to any interest due and owing for the breaches of fiduciary duty);

K.      Award such other and further relief as the Court deems equitable and just.

Dated: November 9, 2016          Respectfully submitted,

                                 _/s/ Sharon S. Almonrode_
                                 Sharon S. Almonrode (P33938)
                                 THE MILLER LAW FIRM, P.C.
                                 950 West University Drive
                                 Rochester, MI 48307
                                 Tel:  (248) 841-2200
                                 Fax:  (248) 652-2852
                                 ssa@millerlawpc.com

                                 BERGER & MONTAGUE, P.C.

                                 Todd S. Collins
                                 Shanon J. Carson
                                 Robin Switzenbaum
                                 Ellen T. Noteware
                                 1622 Locust Street
                                 Philadelphia, PA  19103
                                 Tel.:  (215) 875-3000
                                 Fax:  (215) 875-4604
                                 tcollins@bm.net
                                 scarson@bm.net
                                 rswitzenbaum@bm.net
                                 enoteware@bm.net

                                 SCHNEIDER WALLACE
                                 COTTRELL   KONECKY   WOTKYNS
                                 LLP

                                 Garrett W. Wotkyns
                                 John J. Nestico
                                 2000 Powell St. Suite 1400
                                 Emeryville, CA 94608
                                 Tel:  (480) 315-3841
                                 Fax:  (866) 505-8036
                                 gwotkyns@schneiderwallace.com
                                 jnestico@schneiderwallace.com

33

SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS
LLP

Todd M. Schneider
Kyle G. Bates
180 Montgomery St., Suite 2000
San Francisco, CA  94104
Tel:  (415) 421-7100
Fax: (415) 421-7105
tschneider@schneiderwallace.com

*Attorneys for Plaintiff(s)*

34