**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

PATRICK CHENDES, JILLIAN SMITH,
and DION TUMMINELLO,

      Plaintiffs,

v.                                                                    Case No. 16-13980

XEROX HR SOLUTIONS, LLC,

      Defendant.

_____/

## OPINION AND ORDER GRANTING MOTION TO DISMISS

Plaintiffs are participants in three Ford Motor Company retirement plans. (Dkt. #21 Pg. ID 360.) They bring this proposed class action against Defendant Xerox HR Solutions, LLC—the company that provides "platform and recordkeeping services" for the administration of their plans (*id.* at Pg. ID 362)—for alleged violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. Before the court is Defendant's "Motion to Dismiss Plaintiffs' First Amended Class Action Complaint" (Dkt. # 23). The motion is fully briefed, and this court held a hearing on October 25, 2017. For the following reasons, Defendant's motion is granted, and Plaintiffs are given limited leave to replead.

## I. BACKGROUND

Plaintiffs are participants in three Ford Motor Company retirement plans ("Ford Plans"): the Ford Retirement Plan, the Ford Motor Company Savings and Stock Investment Plan for Salaried Employees, and the Ford Motor Company Tax-Efficient Savings Plan for Hourly Employees. (Dkt. #21 Pg. ID 360.) These plans are "'individual

account plans,' tax qualified retirement plans maintained by employers for the benefit of their employees." (*Id.* at Pg. ID 362.) Participants in the Ford Plans are in charge of directing the investment of their accounts among the available investment options. (*Id.* at Pg. ID 363.) Plaintiffs bring this action on behalf of their plans and "all other similarly situated qualified retirement plans." (*Id.* at Pg. ID 360.)

The Ford Plans "participate in the Ford Defined Contribution Plan Master Trust" ("Master Trust"), which was created "to permit the commingling of trust assets of the Ford Plans for investment and administrative purposes." (*Id.* at Pg. ID 361.) "Participant accounts in the Ford Plans are thus comprised of various combinations of any employee contributions, any employer contributions[,] and any investment income earned from the individual investment options selected within the participant account." (*Id.*) At the end of 2015, the net assets in the Master Trust totaled $13.94 billion. (*Id.* at Pg. ID 362.)

Defendant "provides platform and recordkeeping services to the Master Trust for the administration of the Ford Plans." (*Id.*) "[A]mong the optional services that Xerox HR makes available to its qualified plan customers is the opportunity for plan participants to obtain professional investment advice regarding the investment of their plan accounts." (*Id.* at Pg. ID 364.) For that service, "Xerox HR has contracted with Financial Engines [('FE')]." (*Id.*) According to Plaintiffs, Ford decided to include this optional service among the services that it offered to Plaintiffs and other participants in the Ford Plans, and the "Ford Plans and/or Master Trust" executed a separate agreement with FE. (*Id.*) "The agreement between the Ford Plans and FE contains an acknowledgement that FE is an ERISA fiduciary with respect to the investment advice program" and provides for the fee

Plaintiffs and other plan participants will pay for FE's services, a percentage of the participant's account value on a scaled basis. (*Id.*)

Plaintiffs allege that, while the Ford Plans and FE executed their own agreement, Defendant "dictates and controls certain of the terms and conditions on which FE will provide services to the retirement plans administered on the Xerox HR platform." (*Id.*) As to the cost of being included as the sole investment advice service provider on Defendant's platform, "FE agreed to pay—and is paying—Xerox HR a significant percentage of the fees it collects from Ford's 401(k) plan investors," including Plaintiffs. (*Id.* at Pg. ID 365.)

This, according to Plaintiffs, is the problem—because Xerox is already collecting fees for its recordkeeping services, its demand for a percentage of FE's take from Plaintiffs amounts to a "kickback." (*Id.*) The fees Xerox HR collects from FE "are not being paid for any substantial services being provided by Xerox HR to FE or to participants of the Plans, . . . but are instead being paid as part of a so-called 'pay-to-play' arrangement." (*Id.*) Specifically, Plaintiffs allege that "FE is paying Xerox HR over 30% of the fees it receives from the Ford Plans," an amount that they believe "is plainly unreasonable." (*Id.* at Pg. ID 370.) Moreover, "[t]his 'pay to play' arrangement wrongfully inflates the price of FE's professional investment advice services that are critical to the successful management of workers' retirement savings and violates the fiduciary responsibility and prohibited transaction rules of Sections 404, 405[,] and 406 of ERISA, 29 U.S.C. §§ 1104, 1105[,] and 1106." (*Id.* at Pg. ID 365.)

Plaintiffs bring four claims for this allegedly wrongful activity. First, Plaintiffs allege that Defendant and FE breached their fiduciary duties to the Plan participants

and beneficiaries in violation of ERISA § 404, 29 U.S.C. § 1104 ("Count I"). (*Id.* at Pg. ID 387–90.) Second, Plaintiffs allege various "prohibited transactions" in violation of ERISA § 406, 29 U.S.C. § 1106, by both Defendant and FE ("Count II"). (*Id.* at Pg. ID 390–93.)[1] Third, Plaintiffs claim that, even if Defendant is not a fiduciary, Defendant is liable for FE's commission of prohibited transactions because Defendant knowingly received improper payment from FE, a fiduciary to the Ford Plans, *see Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 241 (2000) ("Count III"). (*Id.* at Pg. ID 394–95.) Finally, Plaintiffs allege that Defendant failed to meet its disclosure obligations under 29 C.F.R. § 2550.408b-2(c)[2] ("Count IV"). (*Id.* at Pg. ID 395–96.)

## II. STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679. The court views the complaint in the light most favorable to the plaintiff and accepts all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009). The court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Directv,*

---

[1] Plaintiffs also contend Defendant can be held liable for FE's breaches under Counts I and II as a co-fiduciary, *see* 29 U.S.C. § 1105. (Dkt. #21 at Pg. ID 389, 393.)

[2] Plaintiffs' complaint refers to 29 C.F.R. § 4550.408(b)-2(c), but this, according to Plaintiffs, was a "citation error." (Dkt. # 27 Pg. ID 1003.)

*Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)). Furthermore, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007).

## III. DISCUSSION

### A. Defendant's Fiduciary Liability (Count I)

"The threshold question in all cases charging breach of ERISA fiduciary duty is whether the defendant was 'acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.'" *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 552 (6th Cir. 2012) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)). A fiduciary includes anyone who "exercises any discretionary authority or discretionary control respecting management of [the] plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i). "[T]he definition of a fiduciary under ERISA is a functional one, is intended to be broader than the common law definition, and does not turn on formal designations such as who is the trustee." *Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999). Because an ERISA fiduciary "may wear different hats," a party may act as a fiduciary with respect to some matters but not others. *See Pegram*, 530 U.S. at 225; *see also Coulter v. Morgan*

*Stanley & Co.*, 753 F.3d 361, 366 (2d Cir. 2016).

Plaintiffs' first three counts turn on whether Defendant and/or FE was a fiduciary with respect to the challenged conduct. Counts I and II—for violation of fiduciary duties and prohibited transactions, respectively—require that Defendant was a fiduciary with respect to the challenged conduct. To the extent that Plaintiffs argue that Defendant can also be held liable for FE's breaches as a co-fiduciary under § 405, 29 U.S.C. § 1105, (*see* Dkt. #21 Pg. ID 389, 393), FE must be a fiduciary for liability to attach. Count III, which alleges that FE committed prohibited transactions for which Defendant can be liable as a party in interest, requires that FE be a fiduciary. Defendant also contends that Plaintiffs are required to establish fiduciary duty with respect to Count IV—that claim, however, is dismissed on other grounds, as set forth below.

Defendant's first argument on this motion to dismiss is that Plaintiffs cannot state a claim for breach of fiduciary duties or for prohibited transactions because neither Defendant nor FE was a fiduciary of the plan with respect to the challenged conduct. (Dkt. #23 Pg. ID 713–21.) Plaintiffs disagree. Plaintiffs premise Defendant's fiduciary status on three grounds. Each will be addressed in turn.

### i. Discretion over Compensation

First, Plaintiffs claim that Xerox HR is a fiduciary because it had discretion over the amount of its compensation. *See Pipefitters Local 636 Ins. Fund v. Blue Cross & Blue Shield of Mich.*, 722 F.3d 861, 867 (6th Cir. 2013). (Dkt. #27 Pg. ID 987.) Specifically, Plaintiffs allege that because the agreement between Defendant and Ford did not cabin Defendant's ability to seek compensation from a party like FE, Defendant in effect controlled the terms of its own compensation by seeking additional money from

FE. (*Id.* at Pg. ID 987–90 ("What is significant is that the agreements between Xerox *and the Plans did not limit* Xerox's discretion in negotiating additional fees for itself from FE." (emphasis original)).)

Defendant, on the other hand, argues that it and FE cannot be fiduciaries with respect to their own compensation (i.e., the fees at issue in this case) because Defendant's and FE's business relationships with both each other and Ford amount to "arm's length contract[s]" that "[do] not give rise to ERISA fiduciary status." *See Seaway Food Town, Inc. v. Med. Mut. of Ohio*, 347 F.3d 610, 619 (6th Cir. 2003). (Dkt. #23 Pg. ID 714–17.) While Defendant acknowledges that under Sixth Circuit precedent a party in an "arm's length contract" may be held liable as a fiduciary where a contract term "authorizes the party to exercise discretion" as to its own compensation, *see Seaway*, 347 F.3d at 619, Defendant argues that it had no discretion in setting its own compensation as it relates to this case. Defendant points to the fact that Plaintiffs premise "discretion" on Defendant's ability to seek compensation from FE. (*Id.* at Pg. ID 716) ("Of note, Plaintiffs do not allege that the actual FE-Xerox Agreement gives Xerox any discretion over its compensation, but only that the negotiation of this contract gave Xerox such discretion.") But negotiation of this contract, according to Defendant, does not amount to a fiduciary act. (*Id.*)

It seems to the court, then, that the question here is what constitutes "discretion" in setting compensation. The court disagrees with Plaintiffs that "discretion" includes the ability to seek additional compensation not provided for in the original agreement.

Plaintiffs rely on *Pipefitters*, which they say "explained that the contract at issue in that case 'in no way cabins Defendant's discretion to charge or set the . . . fee' that it

received for its services, and that, as such, 'Defendant necessarily had discretion in the way it collected the funds to defray its [costs].'" (Dkt. #27 Pg. ID 987 (brackets and ellipses in original) (quoting 722 F.3d at 867).) In *Pipefitters*, the plaintiff insurance fund brought suit against the defendant insurance company for breach of fiduciary duty. 722 F.3d at 865. The fund alleged that its insurance company had wrongfully imposed and failed to disclose the imposition of a fee—a cost transfer subsidy—that was arguably permitted under the terms of the parties' contract. *Id.* at 864–65. The term of the contract at issue, however, did not "set forth the dollar amount for the [fee] or even a method by which the [fee was] to be calculated." *Id.* at 867. Because the defendant only charged the fee to some of its customers, the Sixth Circuit found that the defendant had discretion in how it collected funds from the plaintiff.

This case, however, is not like *Pipefitters*. There is no contract provision between Defendant and the Plans that permits Defendant to exercise discretion in the amount of money it receives from the Plans directly. Plaintiffs do not allege that the agreement between Xerox and the Plans in any way permitted Xerox to exercise discretion in how much money it received *from the Plans*. Rather, Plaintiffs rely on the fact that their agreement with Defendant did not limit Defendant's ability to seek further compensation elsewhere. (Dkt. #27 Pg. ID 989.) Indeed Plaintiffs, in response to the motion to dismiss, refer not to Defendant's discretion in retaining funds from Plaintiffs, but rather to Defendant's "discretion over the compensation it received *from FE*." (*Id.* at Pg. ID 990.) This is not the kind of discretion that was at issue in *Pipefitters*, where the defendant exercised discretion in exacting fees from the plaintiff insurance fund.

Any fees that Defendant collected were collected from FE, and were based firstly

on an arm's length negotiation between Defendant and FE—not Defendant's discretion as it related to the Plans. Even after Defendant and FE entered into their agreement, Defendant's compensation was based on factors outside of Defendant's discretion: namely, the number of participants who used FE's services and the valuation of the assets of those participants. Even so, Defendant's receipt of a portion of FE's fees is entirely dependent on whether the Plan's participants engage FE's services in the first place. If participants in the Plans choose not to use FE's services, Defendant receives no such fees at all.

Because Defendant did not have discretion over the amount of its own compensation as it relates to Plaintiffs, Defendant was not acting as a fiduciary in collecting fees from FE.

### ii. Election of a Fiduciary

Second, Plaintiffs contend that Defendant is a fiduciary because it selected another fiduciary—FE—and "[m]any courts have held that appointing an ERISA fiduciary is itself a fiduciary act." (*Id.* at Pg. ID 990.) They argue that "[c]onsistent with ERISA's functional approach, Xerox is a fiduciary by virtue of its *de facto* control over FE's appointment." (*Id.*)

Defendant argues that it cannot be held liable as a fiduciary for selecting FE for the Ford Plans because such a selection amounted to a "product design feature" for which fiduciary liability cannot attach (*Id.* at Pg. ID 717–20 ("Xerox's decision to offer FE through its platform is a design feature of the products/services offered by Xerox.").) Defendants contend, in other words, that Plaintiffs have not adequately alleged that Defendant indeed *chose* FE for the Ford Plans; rather, according to Defendant, FE was

part of the Xerox HR "product" that *Ford* ultimately chose. (*Id.* at Pg. ID 718 ("[E]ven after Ford chose to use Xerox, Plaintiffs admit that it was Ford who voluntarily 'elected to include [] investment advice service[s]' provided by FE as an additional 'optional' benefit for participants." (quoting First Am. Class Action Compl., Dkt. #21 Pg. ID 364)).) Any contention by Plaintiffs that Defendant effectively selected FE because "Ford could not reasonably have simply moved its plans to another platform provider" is, Defendant argues, "entirely conclusory." (Dkt. #23 Pg. ID 718.)

The court agrees with Defendant that, from the face of Plaintiffs' complaint, it was Ford which ultimately elected to engage FE. (Dkt. # 21 Pg. ID 364 ("Ford elected to include such investment advice service [sic] among the optional services made available by Xerox HR to Plaintiff and the other participants in the Ford Plans. A separate agreement was signed between the Ford Plans and/or Master Trust and FE.").) The argument that Ford could not "reasonably" have made a switch to a different record keeper is inapposite—Ford still made the decision. And Plaintiffs have not provided the court with any authority to suggest that the inability to "reasonably" switch to a different record keeper amounts to a lack of choice in deciding on an investment advice services provider.

Plaintiffs do allege—albeit through conclusory statements—that Defendant "controlled the negotiation of the terms and conditions under which FE would provide its services to the participants of the Ford Plans." (*Id.* at Pg. ID 376.) They also allege that "Xerox HR's discretionary control over the provision of FE's services to the Plans gives Xerox HR discretionary authority and control over the management of the Plans themselves." (*Id.* at Pg. ID 378.) A similar argument was raised by plaintiffs in *Hecker v.*

10

*Deere & Co.*, 556 F.3d 575, 583–84 (7th Cir. 2009). In *Hecker*, plaintiffs were participants in retirement plans offered by Deere. 556 F.3d at 578. They alleged, *inter alia*, that Fidelity Trust (acting simultaneously as a record keeper and administrator of their plans, as well as trustee of two of the plans) violated its duties as a "functional fiduciary" by improperly selecting funds that were managed by Fidelity Research, who in turn was giving Fidelity Trust a portion of the fees it collected. *Id.* at 583.

The Seventh Circuit in *Hecker* determined that there was nothing wrong with Fidelity's arrangement, finding "[t]o the contrary, as Fidelity points out, there are cases holding that a service provider does not act as a fiduciary with respect to the terms in the service agreement *if it does not control the named fiduciary's negotiation and approval of those terms.*" *Id.* (emphasis added). The Seventh Circuit found that Fidelity Trust lacked such control because "the Trust Agreement gives Deere, not Fidelity Trust, the final say on which investment options will be included. The fact that Deere may have discussed this decision, or negotiated about it, with Fidelity Trust does not mean that Fidelity Trust had discretion to select the funds for the Plans." *Id.* While the plaintiffs on appeal alleged that "Fidelity Trust exercised *de facto* control over the selection of the funds and Deere rubber-stamped its recommendations," the Seventh Circuit rejected that argument because the plaintiffs had not included it in the complaint. *Id.* at 583–84. Rather, plaintiffs had alleged that Fidelity Trust had merely "played a role" in the selection of investment options. *Id.* As the Seventh Circuit noted: "There is an important difference between an assertion that a firm exercised 'final authority' over the choice of funds, on the one hand, and an assertion that a firm simply 'played a role' in the process, on the other hand." *Id.* at 584. Because the *Hecker* plaintiffs had not

sufficiently alleged control, the court declined to comment on the "possible scope of the 'functional fiduciary' concept." *Id.*

Plaintiffs here, however, have alleged control. (*See, e.g.*, Dkt. #21 Pg. ID 376 ("Xerox HR hired FE and controlled the negotiation of the terms and conditions under which FE would provide its services to the participants of the Ford Plans.").) Ultimately, in light of the fact that the "definition of a fiduciary under ERISA is a functional one," *Smith*, 170 F.3d at 613, it is possible for a party to act as a functional fiduciary to the extent that it controls the terms and conditions under which a fiduciary will act in a fiduciary capacity with respect to another party.

Plaintiffs seem to suggest, in this portion of the complaint, that by "control" over the negotiation of terms and conditions, they mean simply that FE, after contracting with the Ford Plans, would still be required to pay Defendant a portion of its fees. (*Id.* (specifying that the "terms and conditions" Defendant controlled were, "specifically, the terms requiring payment to Xerox HR of a portion of the fees paid by retirement plan investors for participating in the investment advice program.").) The court doubts that such an allegation—an allegation that does not say that Defendant was directly involved in the Ford-FE negotiations—rises to the level of appointment of a fiduciary sufficient to impose fiduciary liability. However, as Plaintiffs' complaint is unclear on this point (and thus does permit the court to infer more than a "mere possibility of misconduct," *Iqbal*, 556 U.S. at 678) Plaintiffs will be given leave to replead to allege—to the extent that they can—facts demonstrating that Defendant "exercised de facto control" over the election of FE as a fiduciary for the Plans.

*iii. Control Over the Ford-FE Agreement*

Finally, Defendant is an ERISA fiduciary, according to Plaintiffs, because fiduciary status is "ultimately a matter of functional control over a plan or its assets" and the agreement between Ford and FE amounts to a "plan asset" over which Defendants had "functional control." (*Id.* at Pg. ID 994.) This argument is slightly different than Plaintiffs' argument, raised above, that Defendant selected FE as a fiduciary by maintaining control over the terms of FE's agreement with Ford; this argument alleges that the agreement itself was a "plan asset" rather than a means for Defendant to select FE as a plan fiduciary.

Defendant contends that it cannot be an ERISA fiduciary with respect to control over the "plan asset" of the Ford-FE agreement because there is no reason to believe that the Ford-FE agreement is an "asset of the Plans." (*Id.* at Pg. ID 720–21.) Moreover, Defendant argues, negotiation of the Ford-FE agreement was not a fiduciary act, and the contract itself gives Defendant no authority over plan assets. (*Id.* at Pg. ID 720.)

ERISA itself does not define what it means to be an "asset" of a plan.[3] Black's Law Dictionary, however, defines "asset" as "1. An item that is owned and has value. 2. (*pl.*) The entries on a balance sheet showing the items of property owned, including cash, inventory, equipment, real estate, accounts receivable, and goodwill. 3. (*pl.*)All the property of a person (esp. a bankrupt or deceased person) available for paying debts or for distribution." *Black's Law Dictionary* (10th ed. 2014). "Central to the definition of 'asset,' then, is that the person or entity holding the asset has an ownership interest in a given thing, whether tangible or intangible." *In re Luna*,

_____

[3] 29 C.F.R. § 2510.3–102 does define ERISA plan assets as they relate to employee contributions, but only to employee contributions; as such, it is irrelevant for this analysis.

406 F.3d 1192, 1199 (10th Cir. 2005). Accordingly, as Plaintiffs note, "assets of an employee benefit plan generally are to be identified on the basis of ordinary notions of property rights." *Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Mich.*, 751 F.3d 740, 745 (6th Cir. 2014) (citation and internal quotation marks omitted).

Plaintiffs rely on *In re Luna*, 406 F.3d at 1199–2000, for the proposition that "[c]ontractual rights are, ordinarily, intangible property rights, which makes them plan assets for the purposes of ERISA." (Dkt. #27 Pg. ID 995.) But at issue in *Luna* was the contractual right to collect unpaid employer contributions to the plan—not the entirety of a contract for the provision of services between two third parties. Plaintiff has cited no authority for the proposition that a contract for services independently negotiated between third parties constitutes an intangible property interest rising to the level of a plan asset. The court, therefore, finds no reason to conclude that the Ford-FE agreement was an "asset" of the plan. Accordingly, Defendant was not a fiduciary based upon the proffered theory that it exercised control over the Ford-FE agreement.[4]

### B. Whether Defendant's Fees Were "Reasonable"

Defendant argues that Plaintiffs' claims should also be dismissed because Plaintiffs have failed to sufficiently allege that Defendant's fees were "unreasonable." Specifically, Defendant maintains that "nothing in ERISA prohibits the asset-based fee sharing arrangement between FE and Xerox." (*Id.* at Pg. ID 721.) For this proposition, Defendant cites *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009). In *Hecker*, as noted above, participants in Deere's retirement plans brought suit against Deere, Fidelity Management (the plans' record keeper and trustee), and Fidelity Research (the

---

[4] This finding does not limit Plaintiffs' right to replead, it they can, that Defendant had *de facto* control over the appointment of FE as a fiduciary as described above.

14

plans' investment advisor) for, *inter alia*, failing to disclose that Fidelity Research shared its asset-based fees with Fidelity Management. 556 F.3d at 578. The district court dismissed the plaintiffs' claims, and the Seventh Circuit affirmed, ruling that the failure to disclose the fee sharing was not actionable because "such an arrangement . . . violates no statute or regulation." *Id.* at 585.

Defendant also alleges that the fee sharing arrangement in this case is reasonable in light of the fact that "it is to the plan participants' benefit that FE and Xerox cooperate in providing FE's investment advice services" and that "[u]ndertaking the responsibility for effectuating FE's trading instructions is a significant risk warranting compensation commensurate with that risk." (Dkt. #23 Pg. ID 722–23.) Moreover, Plaintiffs do not, according to Defendant, allege that the same services are available elsewhere for less money. (*Id.* at Pg. ID 723.)

Plaintiffs counter that they have alleged that Defendant's take of FE's charges to the plans—approximately 30% of the gross amount in fees FE received—is "patently disproportionate" to the "data connectivity services" Defendant ostensibly provided. (Dkt. #27 Pg. ID 996.) That patent disproportionality, according to Plaintiffs, is made more obvious by the fact that Defendant was "already obligated to provide data connectivity services by virtue of its recordkeeping agreements with the plans." (*Id.*) Plaintiffs argue there is also no reason for an asset-based fee for data connectivity services because "they are not the kind of services that get more costly to provide or valuable in proportion to the amount of assets under management." (*Id.* at Pg. ID 997.)

Plaintiffs, relying on *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009), essentially argue that their allegations thus far permit the inference that

Defendant's fees were unreasonable, and that dismissal on the basis of unreasonable fees would be improper at this stage. (Dkt. #27 Pg. ID 998.) In *Braden*, a participant in Wal-Mart's employee retirement plan brought suit against Wal-Mart and various individual executives for breach of fiduciary duties in managing the plan. 588 F.3d at 590. The plaintiff claimed that defendants had mismanaged the plan by allowing the plan's trustee to have a revenue-sharing arrangement with mutual funds that the trustee selected for the plan participants. 588 F.3d at 595–96. The Eighth Circuit reversed the district court's dismissal. The district court had faulted the plaintiff for pleading "no allegations regarding the fiduciaries' conduct," *id.* at 595, but the circuit determined that while "none of [plaintiff's] allegations directly addresses the process by which the plan was managed," it was "reasonable . . . to infer from what [was] alleged that the process was flawed," *id.* at 596.

Dismissal on the basis of whether or not the fees in this case were "unreasonable" would be inappropriate. Indeed, an indefinite concept like "reasonableness" is precisely the kind of factual inquiry inappropriate for a motion to dismiss. While the fee-sharing arrangement itself, as Defendant notes, is not *per se* a violation of ERISA, it does not follow that Defendant's arrangement must have been reasonable. The court declines Defendant's invitation to dismiss on this basis.

### C. Prohibited Transaction Claims (Count II and III)

Plaintiffs allege in Counts II and III that Defendant and/or FE engaged in "prohibited transactions" in violation of ERISA § 406, 29 U.S.C. § 1106. Count II is premised on Defendant's status as a fiduciary and alleges four types of prohibited transactions in violation of § 406(a) and § 406(b). (Dkt. #21 Pg. ID 390–91.) Count III

16

alleges that—even if Defendant is not a fiduciary—Defendant is subject to "appropriate equitable relief" for FE's prohibited transactions.

### i. Defendant's Fiduciary Liability

Section 406(a) bars certain transactions between the plan and a "party in interest"—the transactions involved in § 406(a) "generally involve uses of plan assets that are potentially harmful to the plan." *Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996). The statute provides, in relevant part, that:

> Except as provided in section 1108 of this title . . . a fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . (C) furnishing of goods, services, or facilities between the plan and a party in interest; [or] (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan.

29 U.S.C. § 1106(a)(1)(C)–(D). Thus, in order to state a claim against Defendant for a prohibited transaction under § 406(a), Plaintiffs are required to plead adequate facts to establish that Defendant was a fiduciary. Additionally, under § 406(a)(1)(C), Plaintiffs must show a transaction involving the plan and a party in interest. Under § 406(a)(1)(D), Plaintiffs must show a transaction for the benefit of a party in interest that involves "assets of the plan."

Section 406(b) prohibits certain transactions between the plan and a fiduciary. The statute provides, in relevant part, that:

> A fiduciary with respect to a plan shall not . . . (1) deal with the assets of the plan in his own interest or for his own account, [or] (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

29 U.S.C. § 1106(b)(1),[5] (3). As with § 406(a), Plaintiffs are required to plead

---

[5] Defendant contends in its motion to dismiss that although Plaintiffs cite

adequate facts to establish that Defendant was a fiduciary. As relevant here, they are also required to demonstrate that the fiduciary "deal[t] with assets of the plan."

Defendant again argues that liability for prohibited transactions in Count II cannot attach because Defendant was not a fiduciary with respect to the challenged conduct. (Dkt. #23 Pg. ID 726.) In addition, Defendant claims that Plaintiffs cannot establish a transaction between the "plan" and a party in interest because the Ford Plans were not parties to the FE-Xerox Agreement. (*Id.*) Finally, Defendant argues that it cannot be subject to liability under § 406(a)(1)(D), § 406(b)(1), or § 406(b)(3) because Plaintiffs cannot show a transaction involving "assets of the plan." (*Id.*) According to Defendants, once the Plans paid FE for FE's services, the money collected was an asset of FE—not an asset of the plans. (*Id.* at Pg. ID 726–28.)

Plaintiffs argue, as above, that Defendant was a fiduciary. (Dkt. #27 Pg. ID 1000.)[6] They also argue that "[t]he Xerox-FE agreement related *only* to the provision of

§ 406(b)(1) in their complaint, they have not identified a violation of this section. (Dkt. #23 Pg. ID 725 n.12.) Plaintiffs seem, in their response, to counter that such a violation is implied by the factual statements in the First Amended Class Action Complaint. (Dkt. #27 Pg. ID 999 n.13.) For the purposes of this Opinion and Order, the court assumes that Plaintiffs have alleged that Defendant engaged in a transaction that violates § 406(b)(1).

    [6] Plaintiffs also note in this section of their response that "even if Xerox were not a fiduciary, it was indisputably a party in interest, and so its receipt of compensation from FE was still a 'direct or indirect' 'furnishing of . . . services . . . between the plan and a party in interest' prohibited by ERISA § 406(a)(1)(C) and the diversion of fees from FE was at least an 'indirect' 'transfer to . . . a party in interest' of plan assets prohibited by ERISA § 406(a)(1)(D)." (Dkt. #27 Pg. ID 1000.) Plaintiffs appear to suggest by this argument that Defendant's status as a party in interest, standing alone, would be enough to impose liability on Defendant for these transactions. (*Id.* at Pg. ID 1000–01 ("In any event, non-fiduciaries who knowingly participate in or benefit from prohibited transactions are subject to equitable remedies, including disgorgement of traceable proceeds . . . .").) The court notes, however, that the prohibited transaction

services to ERISA plans, and in fact governed the provision of services to all of the plans in the class," which amounts to a "transaction involving a plan." (*Id.* at Pg. ID 1001.) Finally, Plaintiffs characterize Defendant's view of "plan assets" as "overly myopic," arguing that "Congress drafted the statute" to refer to "direct and indirect" transactions "to put a stop to formalistic arguments like the one Xerox makes here, that, if adopted, could provide an easy roadmap to launder self-dealing payments." (*Id.*)

As addressed above, Plaintiffs have not sufficiently pled that Defendant was acting as a fiduciary with respect to the Ford Plans. Therefore, Plaintiffs' claims of prohibited transactions in Count II will be dismissed. Because the court has granted Plaintiffs leave to replead fiduciary status based on *de facto* control over fiduciary appointment, however, the court will address Defendant's remaining arguments.

The court agrees with Defendant that the payments from FE to Defendant do not constitute "plan assets." *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009), is again helpful. The *Hecker* plaintiffs alleged—as Plaintiffs do here—that the Fidelity defendants maintained discretion over the Plans' assets "by determining how much revenue Fidelity Research would share with Fidelity Trust." 556 F.3d at 584. The defendants—along with the Department of Labor—countered that the fees collected were not plan assets because they were drawn from the mutual funds at issue in the case. *Id.* The court determined that "[o]nce the fees are collected from the mutual fund's assets and transferred to one of the Fidelity entities, they become Fidelity's assets—again, not the assets of the Plans." *Id.* (citing 29 U.S.C. § 1001(b)(1), which exempts assets of an

---

rules in § 406(a) and (b) still require that a fiduciary is involved somehow. The court will therefore consider this argument only as it relates to Defendant's alleged liability for FE's prohibited transactions to the extent that Plaintiffs have alleged that FE is a fiduciary.

investment company issuing securities from being plan assets under ERISA). Plaintiffs maintain that this "myopic" view, "if adopted, could provide an easy roadmap to launder self-dealing payments." (Dkt. #27 Pg. ID 1001.) But Plaintiffs have cited no authority holding that funds paid by a plan to a service provider continue to be plan assets after the transfer. And they fail to present any meaningful way that a court could draw a line representing where plan assets, once lawfully paid as fees to a service provider under the terms of a negotiated agreement, would cease to be plan assets. Plaintiffs' argument is accordingly rejected.

This does not, however, dispose of Plaintiffs' argument that Defendant committed a prohibited transaction under § 406(a)(1)(C), which, by its plain language, does not require "assets of the plan." Defendant contends that it cannot be liable under this provision because the plan was not a party to the Xerox-FE Agreement, and therefore the Defendant could not have "cause[d] the plan to engage in a transaction" with FE as required by § 406(a). (Dkt. #23 Pg. ID 726).[7] Under the complaint as currently alleged, the court agrees. Plaintiffs have nowhere alleged facts that would tend to show that Defendant (even if it were acting as a fiduciary) *caused* the Ford Plans to enter into a transaction constituting the "furnishing of goods, services, or facilities between the plan and a party in interest." Plaintiffs, however, will be given leave to replead facts that would make this claim "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

_____

[7] Plaintiffs, in response, appear to misapprehend what is required by the statute. (*See* Dkt. #27 Pg. ID 1001.) Plaintiffs contend that Defendant is incorrect to say "that there was no transaction involving a plan in the Xerox-FE agreement" because "the Xerox-FE agreement related *only* to the provision of services to ERISA plans." (*Id.*) (emphasis original). But what is required by § 406(a) is not merely a transaction *involving* the plan, but that the fiduciary "cause[d] the plan to engage in a transaction."

*ii. Defendant's Non-Fiduciary Liability*

Plaintiffs claim in Count III that even if Defendant is not a fiduciary with respect to the challenged conduct, FE undoubtedly is. Defendant, therefore, can still be liable to Plaintiffs for prohibited transactions under ERISA § 406(a)(1)(C), (a)(1)(D), (b)(1), or (b)(3) because Defendant is a "party in interest" to the Ford Plans. (Dkt. #21 Pg. ID 394–95; Dkt #27 Pg. ID 1000–01.) Specifically, Plaintiffs argue that FE is a fiduciary to the Ford Plans because it "'rendered investment advice for a fee or other compensation' with respect to Plan assets, and thus satisfies ERISA § 3(21)(A)(ii)." (Dkt. #27 Pg. ID 986.) FE has also, according to Plaintiffs, acknowledged its status as a fiduciary in both its agreement with Ford and the filings by its parent company with the Securities and Exchange Commission. (*Id.* at Pg. ID 986–87.) And even if FE is not a fiduciary, according to Plaintiffs, "[t]he Ford Plans' other fiduciaries are, by definition, fiduciaries," and "[o]f course the Plans' fiduciaries should have been aware of the fees being paid to Xerox." (*Id.* at Pg. ID 1003.)

Defendant counters that it cannot be held liable for a prohibited transaction claim by FE because FE was not a fiduciary "with respect to its negotiation and receipt of compensation." (Dkt. #23 Pg. ID 730.) Defendant also contends that Plaintiffs have not sufficiently alleged that any Ford Plan fiduciaries (including "sponsors, trustees, administrators, and investment committees") were involved in the alleged prohibited transactions. (*Id.* at Pg. ID 730.) Finally, Defendants argue, Plaintiffs have failed to allege that a fiduciary "'cause[d] the plan' to engage in a prohibited transaction that 'he knows or should know' constitutes a prohibited transaction" as required by § 406(a). (*Id.*) While "Ford 'caused' the Ford plans to enter the Ford-FE agreement[,] . . . there are

no allegations regarding the Ford Plans' fiduciaries and their actual or constructive knowledge of the alleged prohibited transaction." (*Id.*)

The court agrees that there is nothing to suggest that FE was a fiduciary to the Ford Plans when it negotiated its own compensation with Ford. *See Seaway Food Town, Inc. v. Med. Mut. of Ohio*, 347 F.3d 610, 619 (6th Cir. 2003). While FE became a fiduciary to the Ford Plans with respect to the investment advice it provided, it was not wearing its "fiduciary hat" when it negotiated its agreement with Ford. *See Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). Moreover, there is nothing to suggest that FE was acting as a fiduciary for the Ford Plans when it negotiated its agreement with Defendant, either. And while Plaintiffs make the blanket statement in their response to the motion to dismiss that "the Ford Plans' other fiduciaries are, by definition, fiduciaries" that should have been aware that Defendant's receipt of fees constituted a prohibited transaction, the court finds this claim nowhere alleged or supported in the complaint. Accordingly, Plaintiffs' claim for non-fiduciary liability under Count III is dismissed. Plaintiffs are given leave to replead, if they can, that the Ford Plans' other fiduciaries caused the Plans to enter into a transaction that they knew or should have known was prohibited.

### *iii. Defendant's "Safe Harbor" Under § 408(b)(2)*

Defendant argues that even if Plaintiffs have sufficiently alleged that it engaged in prohibited transactions, Defendant is still entitled to dismissal because "Xerox's receipt of fees from FE falls comfortably within the prohibited transaction exemption set forth in ERISA § 408(b)(2)." (*Id.* at Pg. ID 728.) Section 408(b)(2), 29 U.S.C. § 1108(b)(2), provides that prohibitions on transactions in § 406 "shall not apply" to

transactions including "[c]ontracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor."

The court notes at the outset that—though neither party has addressed this distinction—to the extent that Defendant would be entitled to a prohibited transaction "safe harbor," that safe harbor would only extend to violations of § 406(a), not § 406(b). *See Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Mich.*, 751 F.3d 740, 750–51 (6th Cir. 2014) (holding, along with "the majority of courts that have examined this statutory interpretation issue," that § 408 applies to transactions under § 406(a), not § 406(b)).

Regardless, as Plaintiffs point out in their response, this "safe harbor" is a defense that is not an appropriate basis for dismissal on a motion to dismiss. *See Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 676 (7th Cir. 2016) ("[A]n ERISA plaintiff need not plead the absence of exemptions to prohibited transactions.")). Defendants, citing *Hecker*, 556 F.3d at 588, contend that this court may properly consider this exemption because Plaintiffs "put it in play" by anticipating it in their complaint. (Dkt. #23 Pg. ID 728.) But, as the *Hecker* court acknowledged, dismissal on the basis of a § 408(b) exemption, even when anticipated in the complaint, requires that the complaint includes "facts that establish an impenetrable defense to its claims." *Hecker*, 556 F.3d at 588 (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008)). Here, as noted above, the court finds nothing in the complaint to suggest that Plaintiffs have inadequately pled that FE's fees were unreasonable. The court, therefore, will not dismiss the complaint on the basis of Defendant's proposed "safe harbor."

**D. Disclosure Requirements (Count IV)**

Finally, Plaintiffs claim that Defendant is liable for its failure to disclose its fee sharing arrangement under 29 C.F.R. § 2550.408b–2(c). Defendant contends that "there is no basis to conclude that this regulation provides a private right of action." (Dkt. #23 Pg. ID 731.) Plaintiffs claim that the private right of action stems first from § 409, 29 U.S.C. § 1109, which provides for relief against "a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter." Plaintiffs also claim the right stems from § 502(a)(2) and § 502(a)(3), which provide that a civil action may be brought "for appropriate relief under section 1109 of this title" and for relief from "any act or practice which violates any provision of this subchapter," respectively. (Dkt. #27 Pg. ID 1004.) Plaintiffs, in their response to the motion to dismiss, use brackets to replace "this subchapter" in these provisions with "[ERISA]."[8] Thus, according to Plaintiffs, because § 2550.408b–2(c) was promulgated pursuant to § 535, it is a "'provision of ERISA' and a 'responsibility, obligation, or duty,' imposed by ERISA" subjecting Defendant to liability under § 409, § 502(a)(2), and § 502(a)(3). (*Id.*).

Plaintiffs cite no authority for the proposition that this regulation provides a private right of action, and the court has found none. Rather, Defendant argues—and the court agrees—that Plaintiffs improperly rely on the slight-of-hand substitution of "[ERISA]" for "this subchapter" to support their argument that § 2550.408b–2(c) provides a private right of action. In the court's view, Congress' use of the phrase "this

---

[8] *See, e.g.*, Dkt. #27 Pg. ID 1004 ("*See* ERISA § 409 (providing relief against fiduciaries who 'breach[] any of the responsibilities, obligations, or duties imposed . . . by [ERISA]')." (brackets in original)).

subchapter" means nothing other than that; this provision is limited to the actual statutory language, and excludes ERISA regulations like § 2550.408b–2(c) from the scope of civil enforcement through a private cause of action.

This interpretation is supported by the fact that another ERISA provision specifically permits enforcement based on violation of ERISA regulations: section 501, which permits criminal enforcement of ERISA, provides that "[a] person who willfully violates any provision of part 1 of this subtitle, *or any regulation or order issued under any such provision*, shall upon conviction be fined not more than $100,000 or imprisoned not more than 10 years, or both." 29 U.S.C. § 1131 (emphasis added). The civil enforcement provisions of ERISA, however, contain no such language. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (internal quotation omitted).

This decision also accords with other courts' refusal to permit a private cause of action for violations of ERISA regulations promulgated pursuant to subsections of ERISA §§ 502 and 503, 29 U.S.C. §§ 1132 and 1133. *See, e.g.*, *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985) (determining that, despite the fact that claim processing took longer than the time permitted by ERISA regulation, "there really is nothing at all in the statutory text [of § 503] to support the conclusion that such a delay gives rise to a private right of action for compensatory or punitive relief"); *Walter v. Int'l Ass'n of Machinists Pension Fund*, 949 F.2d 310, 316 (10th Cir. 1991) (declining to permit a private cause of action for failure to disclose under ERISA regulation 29 C.F.R.

25

§ 2560.503–1(g)); *Groves v. Modified Ret. Plan*, 803 F.2d 109, 118 (3d Cir. 1986)

("Because § 502(c) authorizes penalties only for breach of duties imposed by 'this

subchapter,' such sanctions cannot be imposed for violation of an agency regulation.").

## IV. Conclusion

Plaintiffs have not yet carried their burden under *Iqbal* and *Twombly* to plead

facts sufficient to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009). Because the court "need not accept as true legal conclusions

or unwarranted factual inferences," *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir.

2007), Plaintiffs' claims in Counts I, II, and III will be dismissed. Plaintiffs are granted

leave to replead as described herein by **November 2, 2017**, if they can do so consistent

with Rule 11. Because Plaintiffs have no private right of action for violation of 29 C.F.R.

§ 2550.408b–2(c), Count IV is dismissed without leave to replead. Accordingly,

IT IS ORDERED that Defendant's Motion to Dismiss Plaintiffs' First Amended

Class Action Complaint is GRANTED and Plaintiffs' First Amended Class Action

Complaint (Dkt. #21) is DISMISSED.

s/Robert H. Cleland                            /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  October 19, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, October 19, 2017, by electronic and/or ordinary mail.

s/Lisa Wagner                            /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\KNP\Civil\16-13980.CHENDES.dismiss.ERISA.KNP.docx